IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASMINE WHEELER,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN EXPEDITING LOGISTICS, LLC,<br><br>Defendant. | CIVIL ACTION NO. |

**COMPLAINT**

Plaintiff Jasmine Wheeler files this Complaint against Defendant American Expediting Logistics, LLC (“American Expediting”), seeking relief from American Expediting’s violations of Title VII of the Civil Rights Act of 1964 (“Title VII” – 42 U.S.C. §§ 2000e, *et seq*.), and in support states the following:

**THE PARTIES**

1. Plaintiff Jasmine Wheeler is an adult individual who currently resides in Orlando, Florida but lived in Pennsylvania for a period of these claims.

2. Defendant American Expediting is a corporation organized under Pennsylvania law with headquarters located at 1400 N Providence Rd, Suite 410, Media, Pennsylvania 19063.

3. At all relevant times, American Expediting continuously employed more than 15 employees and was a covered employer as defined by Title VII.

4. At all relevant times, Wheeler constituted an employee of Summer as defined by Title VII.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the claims of Wheeler arise under the laws of the United States and Wheeler is seeking redress for violations of federal laws.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendant is located within the Eastern District of Pennsylvania and a substantial part of the events and omissions giving rise to this action occurred within the Eastern District of Pennsylvania.

**FACTUAL BACKGROUND**

A. American Expediting and Its Centralized Decision-making

7. American Expediting is a transportation and logistics company who specialized in completing urgent and on-demand deliveries for companies who operated in the healthcare, automotive, airline, and life sciences industries.

8. American Expediting's business relied upon a network of 5,000 drivers, 23 forward stocking warehouses, 55 flexible stocking locations, and a variety of business partnerships to conducts its delivery operations throughout the United States and Canada.

9. Upon information and belief, American Expediting employed over 100 full-time employees, which included 86 employees who worked at its Media, Pennsylvania location; approximately 20 employees who worked at the company's Pittsburgh, Pennsylvania location; and additional employees who worked at the company's 23 forward stocking warehouses and 55 flexible stocking locations.

10. On June 3, 2026, American Expediting emailed its employees that it was ceasing operations. Prior to the company's June 3, 2026 email, American Expediting never provided any

notice to its employees that it was contemplating mass layoffs, closure of any of its employment sites, or the termination of employment for all its employees.

11. Upon information and belief, most employment-related decisions (*e.g.*, hiring, firing, and promotion) took place from American Expediting's headquarters, located in Media, Pennsylvania.

B. <u>American Expediting's Repeated Refusal to Promote Wheeler</u>

12. In February 2025, Wheeler began working for American Expediting at its Pittsburgh, Pennsylvania location as a full-time Dispatcher.

13. Throughout her employment with American Expediting, Wheeler performed all the essential duties of her job, and she performed them well.

14. Wheeler was such an exemplary employee that American Expediting relied on her to train new Dispatchers. Two of Wheeler's former trainees, M.F. and D.D., eventually became managerial-level employees who Wheeler reported to, in some capacity.

15. M.F. and D.D. were promoted ahead of Wheeler despite Wheeler's consistently stellar work performance.

16. Wheeler eventually spoke with American Expediting's Director of Operations, who promised to promote her on numerous occasions.

17. American Expediting's Director of Operations never followed through on his promise to promote Wheeler. Instead, he took advantage of Wheeler. For instance, when Wheeler began working at a new location in November 2025, she was frequently assigned to shifts at the warehouse by herself. As a result, from November 2025 through June 2026, Wheeler regularly performed the work of two people (dispatcher and warehouse worker) for the pay of one employee.

18. Initially, Wheeler performed these two jobs without issue and with no complaints. However, the complexity of the warehouse work raised some concerns for Wheeler.

19. At American Expediting, warehouse-related work was unique because the company's clients often involved businesses who worked in healthcare and life sciences. As such, the company's warehouse workers were trained to carefully package and prepare for delivery items like organs and clinical specimens, which needed to be maintained in a temperature-controlled environment. If they failed to properly perform these tasks, lives could be lost.

20. Wheeler began to raise issues to American Expediting about working the warehouse alone. In addition, Wheeler also raised other issues concerning the warehouse and short staffing within the warehouse. Each time that Wheeler raised an issue, it caused friction.

21. At American Expediting, women who spoke at work were often met with hostility and harassment. For example, whenever one of Wheeler's former female coworkers spoke up about her medical needs, she was chastised and punished. In addition, male supervisors were often openly incredulous whenever female employees spoke up for themselves and often responded by subjecting them to retaliation like sudden schedule changes to less desirable shifts.

22. Wheeler also experienced these acts of retaliation when she began to speak up about work-related issues. For instance, after Wheeler complained about working at the warehouse by herself, American Expediting ignored her concerns and continued to schedule her to work warehouse shifts alone. Male employees, however, would rarely, if ever, be forced to work warehouse shifts by themselves.

23. On June 3, 2026, Wheeler's employment with American Expediting ended because the company stated that it was ceasing operations.

24. Wheeler is initiating this action because American Expediting failed to apply its workplace policies in a uniform and fair manner when it paid her one to two dollars less per hour than her male counterparts who worked the same or similar positions; forced her to work the warehouse by herself, without increased pay, when her male counterparts were rarely (if ever) forced to work warehouse shifts by themselves; and promoted less qualified and less experienced male employees over her even though she was one of the company's best employees.

25. Upon information and belief, American Expediting's decisions to pay Wheeler less than her male counterparts; forcing Wheeler to work warehouse shifts by herself; and promoting less qualified and less experienced males over her were decisions made by American Expediting executives who worked out of the company's Media, Pennsylvania location.

26. Upon information and belief, nearly all of American Expediting's personnel-related decisions, which including setting pay rates for different positions, promotion schedules, and warehouse staffing, were decisions made by American Expediting executives who worked out of the company's Media, Pennsylvania location.

27. It is believed that American Expediting acted willfully and in reckless disregard of Wheeler's rights under Title VII when it paid Wheeler less than her male counterparts; forced Wheeler to work warehouse shifts by herself; and promoted less qualified and less experienced male employees over her.

28. On August 3, 2026, Wheeler dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC"), alleging violations of Title VII and the Pennsylvania Human Relations Act.

29. By letter dated August 11, 2026, the EEOC notified Wheeler of her right to file a civil action against American Expediting.

30. Wheeler has initiated this civil action within 90 days of receiving the EEOC's Right to Sue letter.

31. Wheeler has exhausted her administrative remedies under federal law.

## STATEMENT OF CLAIMS

### COUNT I

Violations of Title VII
(Plaintiff v. Defendants)

32. Wheeler incorporates by reference the allegations in Paragraphs 1 through 31, as if fully set forth herein.

33. The acts and omissions by American Expediting that are described in this Complaint constitute retaliation under Title VII, which includes American Expediting's decisions to pay Wheeler less than her male counterparts; forcing Wheeler to work warehouse shifts by herself; and promoting less qualified and less experienced males over her.

34. As a proximate result of American Expediting's conduct, Wheeler has or will suffer substantial harm, for which Wheeler seeks general, compensatory, consequential, and punitive damages.

## REQUESTS FOR RELIEF

Accordingly, Wheeler requests that this Court enter judgment on her behalf and enter an order directing the award of other relief, as follows:

A. Finding that American Expediting violated Title VII;

B. Awarding Wheeler back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make her whole;

C. Awarding wheeler compensatory damages for pain, humiliation, emotional distress, and damage to reputation;

D. Awarding Wheeler punitive damages under Title VII;

E. Awarding Wheeler attorneys' fees and costs;

F. Awarding Wheeler pre- and post-judgment interest as provided by law; and

G. Awarding Wheeler any other relief to which she is entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

/s/ Sammy Sugiura
Sammy Y. Sugiura
PA ID No. 209942
Greenberg Gross LLP
1650 Market Street, Suite 3600,
Philadelphia, PA 19103
SSugiura@GGTrialLaw.com

**Counsel for Plaintiff**